UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CCS TRANS, INC., *et al.*, ) | |
| ) | CASE NO. 4:14cv2332 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| UNITED STATES DEPARTMENT OF ) | MAGISTRATE JUDGE |
| THE TREASURY INTERNAL REVENUE ) | KATHLEEN B. BURKE |
| SERVICE, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff CCS Trans, Inc. ("CCS") has filed a Motion for a Temporary Restraining Order ("TRO") (Doc. 2), in which it "requests an immediate order suspending the enforcement [by Defendant The United States] of the [tax] levy [asserted by Defendant] against the assets of CCS . . . ." Doc. 2, p. 4. The Motion has been briefed and argued by the parties. As more fully explained below, under the Anti-Injunction statute ("AIA"), 26 U.S.C. § 7421, this Court lacks jurisdiction to entertain CCS's Motion for TRO. Accordingly, the undersigned recommends that CCS's Motion for TRO be **DENIED**.

**I. Procedural History**

CCS filed its Complaint and Motion for TRO on October 20, 2014. Docs. 1 and 2. Its Complaint was captioned, "Complaint to Quite [sic] Title and for a Temporary Restraining Order." Doc. 1, p. 1. On October 21, 2014, District Judge Benita Y. Pearson referred the TRO Motion to the undersigned. Doc. 4. On October 22, 2013, the undersigned held a telephone conference with counsel. *See* Doc. 6. The parties were instructed to discuss the dispute between

1

themselves and to inform the Court as to whether they reached an agreement that would obviate the need for the Court to rule on CCS's Motion for a TRO. The Court set a briefing schedule in the event that the parties did not reach an agreement. Defendant filed a Joint Status Report stating that the parties did not reach an agreement. Doc. 7.

Thereafter, and in accordance with the Court's order, Defendant filed a response to CCS's motion for TRO (Doc. 8). CCS, after the time set by the Court for filing its Reply, filed the following documents: an Amended Complaint (Doc. 9), adding new Plaintiff W. James Cobbin ("Cobbin"), "the founder, majority shareholder and Chief Executive Officer of CCS Trans, Inc.," Doc. 9, ¶4; a Motion for Leave to File a Corrected Amended Complaint (Doc. 10); a Motion for Leave to File Reply Memorandum after the time established by the Court (Doc. 11); a Motion for Leave to Substitute Declaration of W. James Cobbin (Doc. 12); and two Supplements (Docs. 13 and 14). The undersigned hereby **GRANTS** CCS's motion for leave to file an untimely reply brief (Doc. 11).

## II. Background

CCS is a corporation engaged in the transportation business providing bus, van and limousine service to educational institutions and the general public in Youngstown, Ohio. Doc. 9, ¶3. Neither the Complaint nor the Amended Complaint specifies the tax years at issue, although an attachment to the Complaint, a Notice of Levy addressed to Western Illinois University, lists taxes owed for the tax periods ended 12/31/2008 and 12/31/2009 and a civil penalty for the period ended 12/31/2004 (Doc.1-1). CCS's Reply Memorandum asserts, "The levy here concerns the fourth quarter of 2008 and 2009 and a 2004 civil penalty, nothing else." Doc. 11-1, p.1.

2

The government asserts that, since 2008, CCS has failed to make its federal tax deposits as required. Doc. 8, p. 3. The Internal Revenue Service ("IRS") began assessing CCS for its failure to make its federal tax deposits in May 2009 and began sending final notices demanding payment in July 2010. Doc. 8, p. 3. In 2012, the IRS and CCS entered into a partial pay installment agreement. Doc. 8, p. 3. CCS defaulted on the installment agreement on December 4, 2013. Doc. 8, p. 4.

On June 9, 2014, IRS Revenue Officer Aimee Coles met with an entity designated as a power of attorney for CCS and advised it that the IRS would consider issuing levies if CCS did not become current on its employment tax returns and tax deposits. Doc. 8, p. 4. After an exchange of communications, Coles believed that CCS was delaying the collection process and that collection of CCS's tax liability was at risk. Doc. 8, p. 4. Accordingly, on June 17, 2014, Coles issued levies to CCS's customers, including a levy to Western Illinois University, for the employment tax liabilities for 2008 and 2009 and a civil penalty for 2004. Doc. 8, pp. 4-5; Doc. 1-1.

In its Motion for TRO, CCS states,

> On June 17, 2014, the United States asserted a levy against CCS. The levy in question is based upon the erroneous theory that CCS owes payroll taxes, civil penalties, and heavyload taxes. CCS does not agree with this liability conclusion but is not contesting that error here. In this action, CCS is seeking relief due to procedural irregularities, specifically the contacting of third- parties without proper notice and the enforcement of a levy during the collection due process procedure. By reason of the enforcement of this levy, CCS is unable to perform essential transportation requirements for Youngstown State University. See, Cobbin Declaration, Exhibit B. The actions of the United States in relation to the CCS levy are contrary to law.

Doc. 2, p. 2. CCS "requests an immediate order suspending the enforcement of the levy against

3

the assets of CCS and clearing payment to CCS by third parties." Doc. 2, p. 4.

The government asserts that CCS is liable to the United States for total tax liabilities in the amount of $88,603.54. Doc. 8, p. 3. This amount includes outstanding Form 941 employment tax liabilities for 2008 and 2009 and a civil penalty for December 31, 2004, together with interest and penalties. Doc. 8, p. 2. Cobbin, in a declaration, states, "the principal payroll tax amount allegedly owed is $25,475.94. The alleged civil penalty is $33,796.47." Doc. 13, ¶7.

### III. Analysis

The government asserts that CCS's request for injunctive relief is barred by the Anti-Injunction Act, 26 U.S.C. § 7421 ("AIA") and, accordingly, the Court lacks subject matter jurisdiction. Doc. 8, p. 6. The AIA provides, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974). The purpose of the AIA is to protect the "[g]overnment's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Id.* at 736-37 (citing *Enochs v. Williams Packing & Nav. Co., Inc.*, 370 U.S. 1, 8 (1962) "*Williams Packing*"). "With few exceptions, no court has jurisdiction over a suit to preemptively challenge a tax." *RYO Machine, LLC v. U.S. Dept. of Treasury*, 696 F.3d 467, 470 (6th Cir. 2012) (citing 26 U.S.C. § 7421(a)). "This rule arises from a policy preference that those aggrieved by taxation pay the tax first, and then sue for a refund." *Id*. (citing *Bob Jones Univ.*, 416 U.S. at 736 37). "An injunction could issue only 'if it is clear that under no circumstances could the government ultimately prevail.'" *Bob Jones Univ.*, 416 U.S. at

4

737 (quoting *Williams Packing*, 370 U.S. at 7).

To overcome the AIA's statutory bar, CCS must show that it falls under an exception. Specifically, under United States Supreme Court precedent, CCS must show that "under no circumstances could the government ultimately prevail." *See id*.; *RYO Machine*, 696 F.3d at 471.

In its motion for TRO, CCS states that it "does not contest its liability for the taxes in question." Doc. 2, p. 3. Indeed, Cobbins, in his second Declaration, admits, "I am aware that I have not paid my taxes for December 31st of 2008 and 2009." Doc. 13, ¶ 17. However, it appears that CCS does contest its liability for the civil penalty. Doc. 11-1, p. 2. CCS states, "Mr. Cobbin's declaration makes clear the 2004 W-2's were filed and the United States can not under any circumstances conceivably collect the 2004 civil penalty because it was never due." That, says CCS, "satisfie[s] the first prong f [sic] Enochs [*v. Williams Packing*]" (Doc. 11-1, p. 2), i.e., that, under no circumstances can the government prevail. *See RYO Machine*, 696 F.3d at 473 (citing *Williams Packing*, 370 U.S. at 7). It does not. CCS does not identify where in the two Cobbins declarations it "makes clear" that the government cannot prevail.[1] Moreover, the amount allegedly owed on the civil penalty is less than the full amount that CCS allegedly owes and, as quoted above, Cobbins admits owing taxes for 2008 and 2009. *See* Docs. 8, p. 3 and 13, ¶7. Thus, CCS clearly has not shown that the United States cannot prevail on the merits of its tax claims. Similarly, while CCS makes allegations of procedural improprieties by the government, it provides little in the way of specifics as to the alleged procedural defects. *See* Doc. 9, ¶16

---

[1] The second Cobbins declaration contains 43 pages of attachments. Doc. 13. To the extent that a letter from CCS's accountant to the IRS regarding the 2004 W-2 filings that is referenced by Cobbin, the letter does not make clear that the government cannot prevail. *See* Doc. 13, ¶15; p. 29.

5

(Amended Complaint alleges that the government failed to issue the notice required under 26 U.S.C. § 6331).² CCS, therefore, has failed to show that under no circumstances could the government ultimately prevail. See Bob Jones Univ., 416 U.S. at 737.

In its Reply, CCS next argues that its Amended Complaint "traverses the issues raise in Defendant's memorandum." Doc. 11-1, p. 2. CCS indicates that its Amended Complaint supersedes its original complaint and, therefore, Defendant's "motion to dismiss" that was "filed on September 30, 2014, Docket No. 31" must be denied. Doc. 11-1, pp. 2-3. The undersigned observes that Defendant has not filed a motion to dismiss. Defendant filed an opposition to CCS's motion for a TRO, as instructed by the Court. Moreover, Defendant's filing was made on October 23, 2014 (Doc. 8). To the extent that CCS is arguing that its Amended Complaint moots all arguments raised by the government in opposition to CCS's motion for TRO, that argument is without merit.

CCS submits that it will be irreparably harmed if the actions continue. Doc. 11-1, p. 4. The Cobbins declaration filed with CCS's motion for TRO states, "CCS is in immediate need to the funds being claimed by the United States in order to operate and make payroll." Doc. 2-1, ¶6. The declaration also asserts, "*If* CCS is unable to fulfill its contractual transportation requirements CCS *may* cease as a going concern." Doc. 2-1, p. 2 (emphasis added). Even if this statement can be construed to mean that CSS will go out of business if it does not receive injunctive relief, CCS's reasons do not constitute irreparable harm such that the statutory bar

---

² The AIA contains an exception related to 26 U.S.C. § 6331(i). However, CCS has not provided the Court with any facts or legal arguments that establish that it qualifies for an exception to the AIA under 26 U.S.C. § 6331(i).

would not apply.  *See Bob Jones*, 416 U.S. at 745 ("the Act may not be evaded 'merely because the collection would cause an irreparable injury, such as the ruination of the tax-payer's enterprise,'" quoting *Williams Packing*, 370 U.S. at 6).

In an attempt to support its position that its motion for TRO should be granted,[3] CCS submits, "while the [AIA] does not authorize a taxpayer to challenge an IRS assessment of his tax liability, [] the taxpayer is not precluded from bringing and [sic] action under 28 U.S.C. § 2410(a)(1) to challenge procedural irregularities in the seizure and sale of his property following such an assessment."  Doc. 11-1, p. 4 (citing *Kulawy v.U.S.*, 917 F.2d 729 (2d Cir.1990); *Falik v. U.S.*, 343 F.2d 38, 42 (2d Cir.1965); *Aqua Bar & Lounge, Inc., v. U.S.*, 539 F.2d 935, 938-40 (3d Cir. 1976); *Schmidt v. King*, 913 F.2d 837, 839 (10th Cir. 1990); *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir. 1990)).  None of these cases, however, involves a plaintiff who was successful in overcoming the statutory bar to injunctive relief, which is the issue before the Court.  Rather, they relate to the question whether a taxpayer may maintain an action to quiet title, an issue that is not before the Court on CCS's Motion for TRO.

In sum, CCS has failed to show that it is clear that under no circumstances could the government ultimately prevail or that an exception applies.  *See Bob Jones Univ.*, 416 U.S. at 737.  Because CCS fails to meet this showing and the AIA applies, the undersigned finds that the Court lacks jurisdiction and, therefore, does not consider the merits of CCS's request for injunctive relief.  *See RYO Machine*, 696 F.3d at 471 (when a case is barred by the AIA the court does not consider the merits of the request for injunctive relief).

---

[3] It is not clear in this section of its brief whether CCS is arguing that it is entitled to a TRO or if it is arguing that its action to quiet title should not be dismissed for lack of jurisdiction.  *See* Doc. 11-1, p. 4-5.

## IV. Conclusion

For the aforementioned reasons, the undersigned **GRANTS** CCS's motion for leave to file an untimely reply brief (Doc. 11) and recommends that the Court **DENY** CCS's Motion for Temporary Restraining Order (Doc. 2).

IT IS SO ORDERED.

Dated: October 24, 2014

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).